Court, my name is Herbert J. Marick, M-A-R-E-K, middle initial J, appearing as hub counsel for the attorney of record, Marina Trubitsky, who is unavailable due to her own emergency for medical conditions. I'm not sure exactly what all I know is that she was not available. The issues here are raised very succinctly in both the opening and the reply brief, and the issue is whether or not the lower court erred in granting the dismissal of the amended complaint. And we believe that the district court erred in its positions, and we ask the appellate court to review and overturn the lower court's decision. The basis for some of the conclusions reached by the lower court we believe were erroneous because they not only misconstrued certain arguments, but they adopted arguments that were not even raised by the appellees with respect to reaching their conclusions. We believe that we have the proof necessary to sustain both a Sherman Act Section 1 conspiracy claim allegation as well as a Sherman Act Section 2 plausibility of arguments to sustain our claim with respect to this matter. In addition, we believe that the information that has been produced substantiates the existence of enough information and facts to establish the conspiracy, and that at best the issues should not be submitted to dismissal by the motion to dismiss, and should only, if at all, be reviewed and examined with regard to a subsequent post-discovery summary judgment motion, if that is at all applicable. We have established the elements with regard to the theories that we wish to present based on not only the allegations in the complaint, but specifically the facts that have been set forth, some of which is established based on the conduct of the defendant Ebay as well as the other co-defendants. Mr. Merrick, I would like to help you at least utilize your time as valuably as possible for me and I hope for the other colleagues, so I'd like to focus a couple of things. I believe that a contention is that Ebay had monopoly power, was seeking to affect competition in the coin auction online market, particularly on the graded coin auction, and that the competitor particularly named was a company called UBID. Is that correct? That's one of your main theories. Yes, with respect to UBID. UBID, I don't know how familiar you are with it. UBID is a smaller competitor to Ebay. It is an online auction site, and it is our contention that the conduct of Ebay and the way they set these things up with their co-conspirators, the co-defendants, helps to establish anti-competitiveness with respect to UBID's ability to compete with them based on the conduct of UBID. Yes, yes. I'm sorry we're not together, and I don't want to be in flight by interrupting you, but I want to help use your time. But the phone is difficult, so please. It is, it is. I can't read your face. Perhaps. That's good. What is it that Ebay did that prevented UBID from doing the exact same thing that Ebay did so that UBID could compete with Ebay exactly, at least as to this aspect? That is, UBID was free, I assume, to adopt the exact same policy and say, we're going to have you use the word certified only if you have one of the five favored coin graders. There was nothing to prevent that, was there? It's interesting. I'm sorry, is this Judge Gravis? Or Judge Tallman? Oh, Judge Garbus is speaking to you. Thank you, Judge Garbus. It's the exact same question that I asked Ms. Trubitsky when I began to review this matter. And what I have realized from reviewing the paper is that UBID is not only a smaller competitor, but doesn't have the same ability to suffer the temporary loss of market that Ebay was able to control by its conspiracy with these people because you have a market of coins, and there were graded coins that were graded before this conspiracy arose by various grading companies. Ebay then, with these other five, managed to create these standards artificially determining what constitutes a graded coin, controlling the criteria for grading with this cabal. All other coins were not only deemed not certified, they were deemed counterfeit. And thus, these raw coins had a significantly lower value. What happened with respect to UBID is, with the fluctuations and change in the market that occurred by virtue of a huge drop from what had previously been a much larger population of graded coins to a smaller population of graded coins and a drop in the market, UBID, which only has a fraction of the sales volume that is available to Ebay, is not able to withstand the financial drop in the market that occurs from this. If you look on page 2, footnote 1 of the appellant's reply to the answering brief, it says, and referring to exhibit M, that Ebay's succeeding platform UBID had only 217 listings under coins and 3 listings for certified coins. Ebay, on the other hand, had 378,902 listings under coins and 1,112 listings under certified coins. Ebay's position in the market allowed it to weather the fluctuation that occurred in the market, and Ebay was able to do that not only because of its much larger size, but they had the resources to weather as they got themselves involved in this positioning to change the flow and the control of certified versus uncertified. UBID and other smaller competitors who were injured by this policy were not able to do that. Thank you for that, Mr. Marek, but let me ask again. I can see my colleagues, and they'll tell me if they want to interrupt me, which is fine. Does Ebay do something to prevent the five favored graders from rendering their service for the benefit of its competitors like UBID? In other words, I do not understand the complaint to allege that Ebay's policy means that the graders' certification cannot be used for the benefit of a competitor of Ebay. Am I right? At the present moment, there isn't enough discovery available that could definitively answer the preventability. I can only assume, based on the fact that the evidence and the press releases and the workshops … Mr. Marek, let me interrupt you, and again, only because I don't want to be in play. But I am a district judge who would say to you, if you were in front of me, let's not talk about the complaint that you might file in the future. I want to talk about the complaint that you did file. It's not in there, okay? I believe the complaint that we did file establishes the relationship between Ebay and these graders. And by virtue of Ebay's monopolization of the volume of the market, there appears to be, based on the community workshops as well as the press releases, demonstration of the activity between Ebay and these five graders who have the fact that the largest auction company is providing them with this level of control along with Ebay's consent and input. Mr. Marek, this is Judge Tallman. I'd like to ask you a question about economic plausibility of the allegations in the complaint before us. Could you explain to me how it is that Ebay is going to profit from this monopoly activity when, as I understand the allegations, it charges a commission of 9% of the value of the sale? And as you just represented, as of March 16, 2011, there were only 1,112 certified coins out of 378,902 offered for sale on Ebay. How is it that this monopolist is going to profit on that volume of certified coins? That's an excellent question, one that I also in my discussion raised. And from my review of the situation, the fact is as follows. Prior to the institution of what happened here with this conspiracy, there was a large volume of certified coins graded by numerous people, not just the five. Ebay was selling a larger volume of coins which were graded by numerous people with less of a monopolistic control. By virtue of this monopolistic control that's now been exercised by this conspiracy, it is true that temporarily, not permanently, there has been a decline in the commissions that they're obtaining and the number of certified coins. But everybody with a certified coin, everybody with an uncertified coin, now must take them to only these five certifiers. They cannot go to these... But that doesn't answer my question. My question... By virtue of the fact, I'm going to try to, I'm sorry. By virtue of the fact that temporarily the market is depressed and everybody now who has an ungraded coin must take them back to these five to regrade them, thus the market is going to be controlled and more limited, the prices shoot up, and Ebay obtains higher, 9% on a higher priced coin than previously available. There's absolutely nothing about that in the complaint. That argument is wholly speculative. You have nothing to back that up. The backup of that is, I believe, if I may be heard, that the market shrank as a result of the reclassification of certified versus uncertified coins and now... There's nothing in the complaint to that effect. I believe that... Let me say, you're down to three minutes and 41 seconds if you'd like to reserve the remaining... I would, Your Honor. All right, let's hear from Mr. Dwyer. Let me, before you start, let me ask one thing for sure. Please be sure to respond to the reply where it says the so-called derivative counts are not necessarily dismissed. At some point, you just don't want to miss that. I'm sorry, what portion of that is it? I'm sorry, I'm asking Ebay's counsel to be sure to respond to the reply about the derivative counts because that was not addressed previously. Where is the derivative counts that you're referring to? The state law claims. I'm sorry? The pendent state law claims. Thank you. Mr. Dwyer? May it please the Court? John Dwyer on behalf of Ebay. Defendant and appellee, good morning. Good morning. Let me start by answering the first of Judge Garbus' questions that he put to opposing counsel. There is nothing either alleged or in fact that would prevent UBID or any other provider of online auction services from adopting a similar policy or arguably a better policy. They thought they could adopt a policy that would be more attractive to coin buyers and coin sellers. Nothing is alleged in the complaint. And let me address Judge Garbus' second question that he wanted to make sure that I addressed here. So in the opening brief, appellants argued that the dismissal of the derivative claims, those were the Conley Act, the Cartwright Act, and then UCL and various state law claims, should be reversed because they had adequately pledged a Sherman Act violation. Hello? Let me just make sure. Mr. Merrick, are you still with us? Yeah, I'm having a phone problem. I'm sorry. Okay, can you hear? We heard the first part when he said that nothing prevented UBID from adopting. After that, for some reason, I got lost. Okay, can you repeat what you said after nothing prevented UBID? We have to resource. Yeah, exactly. I was addressing Judge Garbus' request to make sure he addressed the issue about the derivative claims, the non-Sherman Act claims that are asserted in the Fourth Amendment complaint. In the opening brief, appellants argued that those dismissals should be reversed because they had adequately pledged the predicate Sherman Act violation. What we argued in our opposition brief is for all the reasons we talked about the Sherman Act failing, you would fail to adequately allege a Sherman Act, and therefore all the dismissal of the derivative claims should also be affirmed by this Court. For the first time in the reply brief, at least before this Court, they argue that no, there are other reasons why the derivative claims should be affirmed. They don't argue that with regard to the Donley or Cartwright Act. They only allege that with regard to the California UCLA and Tortious Interference Claims. Under Graves v. Arpaio, which we cite in our case, it's my understanding that the rules of this Court are that if you don't raise an issue in your opening brief, you're not allowed to raise it in your reply brief. Secondly, for the first time in the reply brief, Your Honor, they identified various California Commercial Code sections and California Civil Code sections, which they say form the cause of their interference claims. They have never alleged those before. I went back and looked in the Fourth Amendment complaint. There's no reference to those at all. Okay. So we believe, as we set forth in our brief, that there are fundamental pleading deficiencies with regard to each of the Sherman Act claims. But let me address the economic plausibility issue, because we believe that because it's so economically implausible, that undercuts the entirety of all of these claims. And under Twombly v. Iqbal, the process that this Court is supposed to undergo in looking at the sufficiency of an antitrust claim and a motion to dismiss is, Iqbal says it's a two-step process. First, determine which allegations are not entitled to the presumption of truth. That is, determine which allegations are merely conclusory and can be ignored. And then second, review the well-pled factual allegations and make a determination whether or not they set forth a plausible claim. And then specifically, there's Ninth Circuit law, adaptive power solutions, William O. Gilley and other cases we cite that say on top of that, an antitrust claim needs to be economically plausible. It's really a precursor to a sort of anticipated Supreme Court position in Twombly. So when you look at those allegations, here's what we have. To me, if you look at them, it's exactly what a company like eBay or any other company should be doing. What they allege is in 2001, a nonprofit group called P&G formed a committee called the Internet Rules Committee. In 2004, another nonprofit, A&A, and eBay formed a group called the Coins Community Watch Group, which A&A called a collaborative effort among a team of hobby experts, coin collectors, and eBay for the purpose of combating misrepresented or fraudulent listings involving coins. In 2006, these two groups, P&G and A&A, allegedly conducted a survey of coin graders, and then they came to eBay and encouraged eBay to adopt a policy whereby coins could be listed as certified only if they were graded by the coin graders who got the best results in the survey, and eBay ultimately adopted that policy. To be clear, if a user wishes to list coins for sale on the eBay site and describes them, a user can still list coins graded by other grading companies and list their grade. They simply can't use the term certified in their listings on the eBay website. All right, let me, so here's, they can't use the word kosher or halal, but can they say, here's a coin offered for $1,000 and it has been evaluated by UGS, can they say that? They can't use the magic word certified, but they can say something like that? No, what they can do under the policy is if it's not graded by one of these five coin grading companies, is they can list the grade they received by whatever other company, for example UGS, that they used. So they can identify it's an MS device. Okay, so you have, I hate to use the word, but you've trademarked, you've usurped the word certified. Okay, I understand. Well, what we've done is eBay's a little bit like a You've defined the word certified. That's right. eBay's a market maker. eBay doesn't, by the way, set the price for coins, doesn't set the price for coin grading services, it doesn't buy coins, it doesn't do any of that. But what about the word halal or kosher? I don't know. A seller wants to sell to the halal market frozen meats or something. eBay might have a policy saying you can't say halal unless it's been certified by this particular Muslim group. I mean, you might have that. I don't know if you do. But otherwise, what the heck? Anybody can say that. That's right. I'm not sure they have that specific policy, but that is basically what this policy is. It's meant to allow users, eBay's customers who come on the website, to hopefully feel more confident so that when they engage in these transactions over a website, they have a higher degree of confidence that the product they get will be of a certain quality. That's all it is. And we submit, Your Honors, that that is not what the competition laws ban, but it's what they encourage. What eBay did is eBay saw a problem. It was brought to them in part by these different users, and they made an innovation to their website. In the reply brief, plaintiffs talk about the fact that this is an innovation because we're not changing coins. Of course, that's not eBay's product. eBay's product is the online platform for these transactions to take place. And what eBay did was they innovated. They addressed the concern that people have about spending a lot of money without knowing for sure what the quality of the coins were. They made a change, and ultimately whether or not users decide that that's a good change or not will ultimately be reflected in whether or not users continue to use eBay or they go to their competitors who again are free to adopt or reject similar policies. Well, this may be a problem, and one answer may be, well, that's not my table. But one gripe is that the plaintiff, allegedly as perfectly qualified as one of the favored five, can never, ever get into that status, and that seems to be unfair. So obviously there's an issue about unfairness in antitrust laws and what the antitrust laws prohibit. But with the regular unfairness issue, they have repeatedly argued since early 2008 when they filed this lawsuit that there's an unfairness because there has not been a new survey. That's what they've argued. Well, there was a survey in 2002. There was a survey in 2004. There was a survey in 2006, and then we got sued. And one can presume, I believe, or infer that the reason why eBay didn't implement new policies or new surveys is because we were dealing with this lawsuit. And, in fact, this is not the only lawsuit. As we cite, there were lawsuits all over the country challenging the way the survey was conducted. There were lawsuits in Florida. There were lawsuits in New York. So to the extent that that's unfair, Your Honor, I think it's actually the result of this litigation and not the result of anything inherent in the law. But as I understand your argument, and this is crudely stated, is even if it's totally unfair, it's not our problem. I mean, you're not agreeing that it's unfair, but even if it is, it's not eBay's problem. If they didn't participate in it. If there's a problem with the way the survey was conducted, they have an issue with P&G and A&A who conducted the survey who they have sued three different times unsuccessfully around the country. Let me just mention two other things about the economic plausibility because I think we don't need to get beyond those issues. First, if you accept the allegations in the complaint as true, according to plaintiffs, eBay didn't even need to do this. Their theory is, of course, that we limit the graders. The grading services go up. The sellers pass on the increased cost. Buyers agree to pay the increased prices. And the commissions are what eBay calls the final value fees increase. That's the theory of economic benefit. But in the complaint on paragraph 199, which is at ER 136, they say eBay, because it's the dominant network provider, it can afford to raise its fees and commissions without losing any users. In paragraph 200, it says eBay was consistently able to raise its commissions without losing its users. I think when you look at economic plausibility, you have to ask was this necessary or, as the district courts said, Judge White, wouldn't it have been far easier and more efficient for eBay to simply raise its fees for the sale of coins than to conspire with unrelated trade groups to develop a policy that might result in higher commissions? I don't believe that in the complaint there is some reference to what's this number. We have the number of certified, that is, by the approved five. But I don't know that we have something about the number of graded coins that are sold that is graded by somebody other than the five, whether it's more than 1,000 or it's less than 1,000. There's nothing like that in the complaint, is there? There's not. The only allegations with regard to listings are the listings with regard to March 11th of 2011. That allegation or that fact might be helpful in doing some financial comparison, but if it's not there, it's not there. But the second issue with economic plausibility, for this to work, as the court is getting at it, for this to work, two things. First, the increase in revenues on this very small number of certified coins is less than, I think we calculated it's 0.3 percent of all the coins that were listed. The commissions or final value fees that eBay receives has increased sufficiently to offset two things that the complaint says takes place. One, they say at paragraph 207, ER 138, that the policy prohibited coin traders, such as Plank of Comedo, from trading on eBay, that there was a whole group of coin traders that just stopped trading on eBay. And secondly, they said that the value of coins traded by other coin traders decreased by 75 percent. So, again, we don't have the numbers. We can't do the math. But for this, what I believe is a convoluted and plausible conspiracy theory to work, they would have had to make sure their commissions offset both of those losses. And then the third point I would just make is that P&G, who is the alleged co-conspirator, is alleged to be a collection of coin collectors. It seems odd to me that P&G would enter into a conspiracy for the purpose of allowing coin traders to increase the cost of their services to their membership. Now, to be fair to Plank, what they say is that some of the P&G members had hoards of coins that had already been certified by these five pre-approved entities. So they had some value in that. Even accepting that as true, that's not true. That's not alleged with regard to all P&G members. And that's just a snapshot in time. The policy's been in place now for some seven years. And at some point, those inventories are going to diminish. And those members, even the ones that had inventories graded by the five pre-approved graders, would have to go back on the market and pay the higher prices. With that, Your Honors, I have 40 seconds left remaining. I would just say, there's a lot of facts here, but anybody, any honest person in the industry, which is the majority is coin dealers, would benefit from a practice that would increase the reliability of a certification. So, I mean, there would be an incentive even for the coin dealers, albeit raising certain costs, to have it. I just, because you had 40 seconds, I thought I'd toss that in. I, of course, agree with that. Anybody who has bought online, I have, you are nervous, especially with used items. It's a little different with new items buying straight from the manufacturer. With used items, you're nervous about the quality, whether it's a used car or a coin. And anything, and eBay does this consistently. It has many, many different policies in place. Anything that increases the confidence of eBay's users to its site is pro-competitive. It makes eBay a better place to go, and, therefore, it's protected under the antitrust laws. All right. Thank you, Mr. Dwyer. Thank you very much. Mr. Merrick, I think you've got just about four minutes, 336, actually, on the clock. Go ahead, in rebuttal. Thank you very much. I appreciate the fact that I have that time left. I would like to respond to the statements that were just made by counsel. In reverse order, I think, may be easier. The argument with respect to the increase of the reliability of certification would be in everybody's interest would be true if the parameters for what constitutes certification, which by itself is an objective standard, it wasn't limited to five graders. And the fact that they are excluding people like UGS, who are not part of this cabal of five, does affect not only UGS, not only Comito and Krachenko, who are respective buyers from UGS, but it affects other competitors, such as UBID, who don't have the ability to adopt the same similar policies because of the fact that, as we mentioned on page six and seven of the reply brief, which was to address the question that was also raised before I had to stop, that the dealers are not locked into one platform and another. And number one, there isn't any ability to determine that the limitation of gradeability to these five assists in the overall consumer confidence and the reliability because nobody has set forth what qualifies these five versus others. It hurts the UBID and the smaller competitors who can't compete along the same lines because if they were, then there would be no reason for people to go to UBID. They would all continue to migrate towards eBay. And if the UBIDs of this world adopted these tactics, which we believe can be established to be a sham, that would open up UBID to being a defendant in these cases as well. So UBID has to at least wait for the dust to settle before they can determine if they can. And in the meantime, they're suffering because of the fact that eBay's market share only grows, and it grows at the expense of competitors. Mr. American, I forgot to ask you in your opening, can you explain to me the tying claim that you make in your complaint? Because I don't see that you have a tying claim. Mr. American, are you still with us? Yes, one moment. Let me get to that point. Hold on just one second. Okay. One moment, and I would like to get to that. Are you speaking to Ms. Trubitsky? Is that what's going on here? Because of her being out, I was trying to let her listen in. Would you hear from her on this one? She's on the phone, but not appearing to argue the cause? What kind of games are you playing with us here? I'm not trying to play any games. She wanted to listen to what was going on. Why couldn't she handle the arguments since she's counseled? Because she was recovering from the medical issue. Well, we'll consider whether or not to issue an order to show cause why she should not be held in contempt. I understand. With regard to the plausibility, there's direct evidence of the conspiracy with the way this action was put together because the grading is closed and they're promoting a safety argument. And the issue is also that they're misapplying the statistics that are found here with respect to these situations. Mr. Merrick, you are out of time, and thank you for your argument. The court will take up the question of what to do with regard to counsel of record and will issue an appropriate order after we have conferred. The case just argued is submitted for decision, and we are adjourned.
judges: Garbis, Tallman, Rawlinson